**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RUTH T.,**

                **Plaintiff,**

    v.                              **Civil Action 2:25–cv–00723**
                                         **Judge Algenon L. Marbley**
                                         **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

                **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Ruth T. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

On October 28, 2021, Plaintiff protectively filed an application for SSI alleging disability beginning October 28, 2021, due to mental illness and asthma. (R. at 212–17, 226). After her application was denied initially and on reconsideration, Administrative Law Judge ("ALJ") Ruben Sheperd held a hearing on March 8, 2023. (R. at 33–68). Ultimately, ALJ Sheperd denied benefits in a written decision on April 7, 2023. (R. at 14–32).

After the Appeals Council denied review, Plaintiff filed a case in the United States District Court for the Southern District of Ohio. The Court remanded the case to the Commissioner. *See [Ruth T.] v. Comm'r of Soc. Sec.*, No. 2:24–cv–00690 (S.D. Ohio April 30, 2024). The Appeals Council then remanded this matter to the ALJ on July 9, 2024. (R. at 833–39). Upon remand,

ALJ Michael Balter held a hearing via telephone on February 25, 2025 (R. at 776–806) and issued a decision again finding Plaintiff was not disabled on March 24, 2025 (R. at 754–75). Plaintiff did not request review by the Appeals Council, opting instead to directly file suit with this Court.

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 30, 2025 (Doc. 1), and the Commissioner filed the administrative record on August 29, 2025 (Doc. 7). The matter has been briefed and is ready for review. (Docs. 9, 10, 11).

### A. The Administrative Record

In his opinion, the ALJ summarized and evaluated Plaintiff's statements to the agency, hearing testimony, medical records, and symptoms. (R. at 760–65). The ALJ also summarized and evaluated the medical source opinions and prior administrative medical findings, including those of Cynthia Waggoner, Psy.D., Kristine Haskins, Psy.D., and Emmanuel Nwajei, M.D. (R. at 766–68). Rather than repeat these summaries, the Undersigned will focus on the evidence pertinent to Plaintiff's assigned errors below.

### B. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since October 28, 2021, the application date. (R. at 759). The ALJ determined that Plaintiff suffered from the following severe impairments: bipolar disorder, schizoaffective disorder, generalized anxiety disorder, asthma, obesity, degenerative joint disease of the knees, and lumbago. (R. at 760). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equals a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except with the following additional limitations. [Plaintiff] can lift fifty pounds occasionally and ten pounds frequently. [Plaintiff] is limited to frequent pushing and pulling with the left lower extremity. [Plaintiff] is limited to occasional

2

climbing of ladders, ropes or scaffolds. [Plaintiff] can frequently climb ramps and stairs. [Plaintiff] can frequently balance and stoop, and can occasionally kneel, crouch, and crawl. [Plaintiff] is limited to occasional exposure to extreme cold. [Plaintiff] is limited to occasional exposure to concentrated dusts, fumes, odors, gases, poor ventilation, and other pulmonary irritants. [Plaintiff] is limited to occasional exposure to hazards such as unprotected heights, dangerous moving machinery, and commercial driving. [Plaintiff] is able to understand, remember and carryout simple instructions. [Plaintiff] has the concentration, persistence, and pace to perform simple and routine tasks. [Plaintiff] is unable to perform fast paced production rate pace–work for example assembly line work or jobs that require strict hourly production quotas. [Plaintiff] cannot perform tandem tasks. [Plaintiff] is limited to occasional interaction with the public, coworkers and supervisors. [Plaintiff] is limited to simple work related decisions. [Plaintiff] is limited to occasional changes within a routine work setting.

(R. at 762).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 763). Plaintiff has no past relevant work. (R. at 768). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform medium exertional, unskilled jobs that exist in significant numbers in the national economy, such as a garment sorter, checker, or a classifier. (R. at 769). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since October 28, 2021, the date the application was filed (20 CFR 416.920(g))." (*Id.*).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

3

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently."  *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.    DISCUSSION

The Undersigned finds that the Commissioner's decision should be affirmed.  Plaintiff's first statement of error challenges the ALJ's evaluation of Dr. Waggoner and Dr. Haskins, the state agency psychological consultants.  (Doc. 9 at 7–10).  Plaintiff's second statement of error asserts that the ALJ improperly evaluated Dr. Nwajei's opinion.  (*Id.* at 10–14).

### A.    Applicable Legal Standard

A plaintiff's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from [her] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.913(a)(1).  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1]  20 C.F.R. §§ 404.1513(a)(1)–(5), 416.920c(c)(1)–(5).  These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . . .

§ 404.1513(a)(2), (5).

4

medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Indeed, the regulations require an ALJ to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [she] considered" the other factors.  *Id.*  If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).  In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how she evaluated each opinion or finding individually but must instead articulate how she considered the opinions or findings from that source in a single analysis using the five factors described above.  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  Finally, the regulations explain that the ALJs are not required to articulate how they considered evidence from non-medical sources.  20 C.F.R. §§ 404.1520c(d), 416.920c(d).

At bottom, the ALJ's role is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be.  *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV

5

1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021).  The Court's role is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported her conclusion with substantial evidence.  *Id.* at \*14.

### B.      State Agency Reviewing Psychologists

Plaintiff contends that the ALJ failed to explain why he did not adopt Dr. Waggoner and Dr. Haskins' findings restricting Plaintiff to superficial social interaction in a work environment free of distractions from others.  (Doc. 9 at 7–10).  The Commissioner counters that the ALJ reasonably accounted for the opined social limitations at issue by restricting Plaintiff to simple and routine instructions and tasks with no strict production quotas, at most occasional social interaction, and no "tandem tasks." (Doc. 10 at 4–7).  The Undersigned finds no error.

The ALJ provided the following discussion and analysis of the opinions:

> I find some persuasive effect in the prior administrative medical finding of state agency psychologist Dr. Cynthia Waggoner Psy.D., who stated [Plaintiff] has mild limitations in understanding, remembering, and applying information, has moderate limitations in interacting with others, has moderate limitations in concentration, persistence, and pace, and has moderate limitations in the ability to adapt and manage oneself (B3A4). She stated [Plaintiff] could perform simple to complex tasks with no strict production quotas, can interact with coworkers, supervisors, and the public on an occasional and superficial basis, and can adapt to changes with advance notice (B3A8–9). Dr. Waggoner's opinion is supported by a review of and familiarity with the evidence in the record, by her own reasoned discussion of how that evidence informed her conclusions, and by her own understanding of agency policies and evidentiary requirements in these matters. The findings of no strict production quotas and occasional interactions with coworkers, supervisors, and the public are consistent with a record that does document some deficits in tolerating stress and pressure (B1F1), and with prior statements from [Plaintiff] that she feels she relates well with others (B7F9). However, I find as inconsistent with the record Dr. Waggoner's statements [Plaintiff] can perform complex tasks, and can interact on a superficial basis. Be it due to feeling overwhelmed by stress or due to low self–esteem, the record indicates [Plaintiff] likely lacks the persistence and motivation to consistently perform any complex job asks (B1F1, B6F5). The term "superficial" is rather vague as it pertains to social interactions, absent further definition. Thus, I do not find that portion of Dr. Waggoner's statement to be persuasive. Dr. Waggoner's statement about adapting to changes with advance notice is similar in scope to my finding [Plaintiff] can tolerate occasional changes in routine work settings. While

the language is not identical, I find that limitation largely persuasive with a record that does show [Plaintiff] occasionally has difficulties managing her moods in response to stressors and changes (B1F1, B7F11).

I find mostly persuasive effect in the prior administrative medical finding of state agency psychologist Dr. Kristen Haskins Psy.D., who stated [Plaintiff] has moderate limitations in understanding, remembering, and applying information, has moderate limitations in interacting with others, has moderate limitations in concentration, persistence, and pace, and has moderate limitations in the ability to adapt and manage oneself (B5A4). Dr. Haskin's stated [Plaintiff] can perform one to three step tasks, can complete simple, short–cycle tasks in a setting that does not have fast pace demands and where [Plaintiff] can work away from the distraction of others, can interact with coworkers, supervisors, and the public on an occasional and superficial basis, can adjust to minor changes in the work setting and still complete an ordinary routine consistently on an independent basis, and would require major changes be introduced in advance and then gradually phased in to allow [Plaintiff] time to adjust to the new expectations (B5A8–9). Like that of Dr. Waggoner, Dr. Haskins' opinion is supported by a review of the record, by a narrative discussion of how that evidence informed her conclusions, and by her own understanding of agency policies and evidentiary requirements in these matters. I find persuasiveness in Dr. Haskins' opinion with the exception of the finding [Plaintiff] can tolerate superficial interactions with others. Again, use of the term "superficial" is generally not policy compliant on its own due to vagueness. The remainder of Dr. Haskins' opinion statement is largely consistent with a record that shows improvement in depression levels and in the intensity of auditory and visual hallucinations over time (B10F18). The finding [Plaintiff] can tolerate occasional interactions with others while working away from the distraction of others is consistent with a record that shows [Plaintiff] able to be polite and cooperative on most every observed occasion, but also takes into account deficits in focus and distractibility (B7F9). While not every word in Dr. Haskins' opinion is identical to that of the residual functional capacity finding in this decision, her statements do closely track that finding with the exception of the statement about superficial interactions.

(R. at 766–67).

Ultimately, the ALJ determined that Plaintiff can "understand, remember and carryout simple instructions" and "has the concentration, persistence, and pace to perform simple and routine tasks." (R. at 762). The ALJ found that she cannot perform "fast paced production rate pace-work for example assembly line work," "jobs that require strict hourly production quotas," or "tandem tasks." (*Id.*). Further, the ALJ limited Plaintiff to "occasional interaction with the

7

public, coworkers and supervisors," "simple work related decisions," and "occasional changes within a routine work setting." (*Id.*).

The Undersigned finds that substantial evidence supports the ALJ's crafted RFC. To begin, "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r*, 618 F. App'x 267, 275 (6th Cir. 2015) (citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13–CV–00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)). In addition, because the ALJ effectively adopted the opined limitations, he did not have to explain his findings any further. *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-746, 2023 WL 4991918, at *8 (S.D. Ohio Aug. 4, 2023) (stating an ALJ is required to "'explain why an opinion was not adopted' only 'if the RFC assessment conflicts with an opinion from a medical source'") (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)), *report and recommendation adopted*, 734 F.Supp.3d 729 (S.D. Ohio 2024). Finally, it is the ALJ who must define the RFC in vocational terms, and as a result, "an ALJ will describe a particular medical opinion as vocationally vague or imprecise, and will further define a term or phrase in more vocationally relevant terms when articulating the RFC at Steps 4 and 5, or for purposes of soliciting testimony from a vocational expert." *Id.* at *5.

Still, Plaintiff contends that the ALJ erred by failing to address Dr. Haskins' opined limitation restricting Plaintiff "to a work environment free from the distractions of others." (Doc. 9 at 8). But the ALJ limited Plaintiff to only occasional contact with coworkers, supervisors, and the public. (R. at 762). Even more, the ALJ found Plaintiff could not have jobs involving tandem tasks. (*Id.*). This Court has found that these types of limitations adequately account for a recommendation of working away from others. *Chad M. v. Comm'r of Soc. Sec.*, No. 2:23-cv-

8

1215, 2024 WL 1930748, at *5 (S.D. Ohio May 1, 2024) (finding an RFC was supported by substantial evidence where it made some alterations to the psychologists' wording of limitations, including not using the specific language of "work[ing] away from others").  *See also David W. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00255, 2025 WL 841074, at *8 (S.D. Ohio Mar. 18, 2025) (finding no error where Dr. Haskins limited plaintiff to working away from distractions of others and ALJ limited plaintiff to "occasional and superficial contact with coworkers and supervisors" and no "jobs involving . . . tandem tasks . . ."); *Damon J. v. Comm'r of Soc. Sec.*, No. 3:23-CV-36, 2024 WL 193658, at *8 (S.D. Ohio Jan. 18, 2024), *report and recommendation adopted sub nom. Damon J. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-36, 2024 WL 1257257 (S.D. Ohio Mar. 25, 2024) 2024 WL 193658, at *8 ("Elimination of 'tandem' work obviously precludes 'work with others.'"); *Andrew E. v. Comm'r of Soc. Sec.*, No. 2:24-cv-276, 2025 WL 724606, at *7 (S.D. Ohio Mar. 6, 2025) (finding limitations to avoid tandem work and not interact with the public sufficiently accounted for a recommendation that the claimant "work away from others," but remanding on other issues).

Plaintiff further asserts that the ALJ erred by rejecting both Dr. Waggoner and Dr. Haskins' limitation restricting Plaintiff to "no more than superficial interaction with others."  (Doc. 9 at 9). The ALJ found Dr. Waggoner's superficial limitation unpersuasive because the "term 'superficial' is rather vague as it pertains to social interactions" (R. at 767 (citing R. at 92)), and Dr. Haskins' superficial limitation unpersuasive because the "use of the term 'superficial' is generally not policy compliant on its own due to vagueness" (R. at 767 (citing R. at 104)).  Plaintiff argues that rejecting the superficial limitation based on vagueness is insufficient and "[t]his line of reasoning has been declared insufficient by this Court on numerous occasions," citing to *Lindsey v. Comm'r of Soc.*

9

*Sec.*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) and *Hummel v. Comm'r of Soc. Sec.*, Case No. 2:18-cv-28 (S.D. Ohio, Mar. 13, 2020), in support.  (Doc. 9 at 10).

Plaintiff's argument is unavailing.  "[A]n ALJ does not err in describing 'superficial' as vocationally vague, or in interpreting an opinion that references 'superficial' interaction in a manner that varies from the 'qualitative' vocational definition that excludes 'occasional' interactions as suggested by this Court in *Lindsey et seq.*"  *Stephen D.*, 2023 WL 4991918, at *10.  No Social Security Administration regulation requires an ALJ to analyze superficial interaction limitations in a specific way, nor is the ALJ required to include buzz words like "superficial interactions" in her RFC determination in order to avoid remand.  *See Reeves*, 618 F. App'x at 275; *Andrea B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-055, 2023 WL 128288, at *7–8 (S.D. Ohio Jan. 9, 2023); *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5315, 2023 WL 1857822, at *9 (S.D. Ohio Feb. 9, 2023), *report and recommendation adopted*, No. 2:21-CV-5315, 2023 WL 2692415 (S.D. Ohio Mar. 29, 2023).

Even more, as discussed above, there is substantial evidence that the ALJ meaningfully considered the type of interactions Plaintiff can have in a work environment.  Though the ALJ did not employ the word "superficial" in his RFC determination, he carefully considered the type of social interaction Plaintiff could handle.  Namely, he found that Plaintiff could not perform tandem tasks and could not endure more than occasional interaction with coworkers, supervisors, and the public.  (R. at 762, 765 ("She has stated that she relates well with others, and has good social supports, indicating residual ability to get along with others outside of having to work in tandem with another to complete job tasks[.]" (citing R. at 687))).  Further, neither state agency psychologist defined "superficial."  Accordingly, precisely how the RFC's limitations differ from superficial interaction limitations—if they do at all—is unclear.  Still, even if the depth of

10

interaction described in the RFC exceeds "superficial" interaction, the ALJ was not required to adopt the state agency psychologists' opinions wholesale. *See Reeves*, 618 F. App'x at 276; *Poe*, 342 F. App'x at 157; *Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-CV-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019), *report and recommendation adopted*, No. 2:18-CV-1024, 2019 WL 3083112 (S.D. Ohio July 15, 2019).  Although Plaintiff may have preferred a different RFC, the ALJ adequately explained the reasoning behind his decision and supported it with substantial evidence.  The Undersigned finds that Plaintiff's first assigned error is without merit.

### C. Treating Source Opinion

In her second assignment of error, Plaintiff challenges the ALJ's supportability and consistency factor analysis of Dr. Nwajei's opinions.  (Doc. 9 at 10–13).  Plaintiff specifically asserts that "[i]t is not clear from the ALJ's cursory evaluation of Dr. Nwajei's opinions nor from the rest of the decision as a whole why Dr. Nwajei's opinions were being rejected." (*Id.* at 13).  In response, the Commissioner says that the ALJ properly gave little persuasive value to Dr. Nwajei's opinion.  (Doc. 10 at 7–12).  The Undersigned agrees with the Commissioner's read.

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).  In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection

11

procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citation omitted).  "In other words, "supportability" is the extent to which a medical source's own objective findings and supporting explanations substantiate or support the findings in the opinion." *Goodman v. Soc. Sec. Admin.*, No. 1:22-CV-00995, 2024 WL 623894, at *14 (N.D. Ohio Feb. 14, 2024).

The Undersigned finds substantial evidence of the ALJ discussing the supportability of Dr. Nwajei's opinion: "Dr. Nwajei's opinion is supported by a treatment relationship with the claimant that goes back five plus years"; "his actual opinion statement gives no indication of what specific symptoms or episodes of poor functioning support his conclusions"; his "stated limitations are also inconsistent in degree with many of his own treatment records, wherein the claimant stated that hallucinations had lessened in intensity over time, and that her depression levels had also improved (e.g., B9F1, B10F18)"; and his "opinions lack narrative support creating a rational connection between specific symptoms and the stated restrictions."  (R. at 767–68 (citing R. at 752–53)).

The ALJ demonstrates that he made a sufficient consistency analysis for Dr. Nwajei's opinion as well.  The ALJ evaluated Dr. Nwajei's opined function limitations:

> I find little persuasive effect in the opinion of Dr. Emmanuel Nwajei M.D., who stated the [Plaintiff] is unable to meet competitive standards in terms of dealing with work stress of skilled, semi-skilled, and unskilled work, and would be absent from work more than four days per month (B11F1-2). Dr. Nwajei went on to state that concerning unskilled work, the [Plaintiff] is seriously limited in ability to maintain attention for two hour segments, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work in coordination with others without being unduly distracted, make simple work related decisions, complete a normal workday without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in a routine work setting (B11F1). Dr. Nwajei's opinion form defined "seriously limited" as being distracted from job activity from eleven to twenty percent of the workday or work week (B11F1). Dr. Nwajei also has stated the [Plaintiff] is unable to work, in a separate statement (B12F1).

12

(R. at 767–68).

The ALJ then compared Dr. Nwajei's function limitations to the record by reference to the two prior administrative findings he had just evaluated (*see* R. at 766 ("Dr. Cynthia Waggoner Psy.D. [] stated the claimant has mild limitations . . . ."), 767 ("Dr. Kristen Haskins Psy.D. [] stated the claimant has moderate limitations . . . .")) and found Dr. Nwajei's opinion "very much inconsistent with both of those assessments, as he has described functional limitations that are much more extreme than indicated in either of those findings." (R. at 768). *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (finding ALJ sufficiently evaluated consistency when she did not reproduce the list of the treatment records a second time within her explanation of why a doctor's opinion was inconsistent with the record because she listed them elsewhere in her opinion).

Although brief, the ALJ conducted a sufficient supportability and consistency analysis. *See, e.g.*, *Crum*, 660 F. App'x at 457 (finding that although the ALJ "might have explained at even greater length why she did not accord Dr. Bell's opinion controlling weight," it was enough that she "addressed the factors the regulation required her to consider, and she provided good reasons at each step"). Only "a minimum level of articulation is needed to provide sufficient rationale for a reviewing court." *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4650, 2022 WL 1793149, at *6 (S.D. Ohio, June 2, 2022), *report and recommendation adopted*, No. 2:21-CV-4650, 2022 WL 2237057 (S.D. Ohio June 22, 2022).

In sum, the Undersigned concludes that the ALJ's decision is supported by substantial evidence and remand is not required.

## IV.    CONCLUSION

Based on the foregoing, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 9) and enter judgment in favor of Defendant.

## V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981)

IT IS SO ORDERED.

Date: April 8, 2026                                    *s/ Kimberly A. Jolson*
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE

14